MICHAEL J. NADER, CA Bar No. 200425
michael.nader@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
500 Capital Mall, Suite 500
Sacramento, CA  95814
Telephone:      916-840-3150
Facsimile:      916-840-3159

JADE BUTMAN, CA Bar No. 235920
jade.butman@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA  94111
Telephone:      415-442-4810
Facsimile:      415-442-4870

Attorneys for Defendant
GHIRARDELLI CHOCOLATE COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMELLO SHEPPARD, individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act;<br><br>Plaintiff,<br><br>v.<br><br>GHIRARDELLI CHOCOLATE COMPANY, a California corporation; and DOES 1 through 100, inclusive;<br><br>Defendant. | Case No.<br><br>**DEFENDANT GHIRARDELLI CHOCOLATE COMPANY'S NOTICE OF REMOVAL**<br><br><br>Alameda County Superior Court Case No. 22CV020713<br>Complaint Filed:  October 27, 2022<br>Trial Date:      None Set<br>Judge: |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant GHIRARDELLI CHOCOLATE COMPANY, a California Corporation ("Defendant"), respectfully removes the instant action, *Romello Sheppard, individually and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act   v. Ghirardelli Chocolate Company, a California Corporation*, originally commenced in the Superior Court of the State of California in and for the County of Alameda, Case No. 22CV0207113, to the United States District Court for the Northern District of California. Removal is proper because this Court has original jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331, as this action arises under federal law. Specifically, Plaintiff's claims are substantially dependent upon the interpretation of a collective bargaining agreement that governs the terms and conditions of Plaintiff's employment with Defendant. Plaintiff's claims are, therefore, preempted by Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141 et seq., and this action may be removed to this Court pursuant to 28 U.S.C. § 1441(a) and (c). In support of this removal, Defendant states the following pursuant to 28 U.S.C. § 1446(a):

I. <u>**BACKGROUND AND SUMMARY OF PLEADINGS**</u>

1.      Plaintiff Romello Sheppard (hereinafter "Plaintiff") was employed by Ghirardelli Chocolate Company, a California Corporation ("Ghirardelli") for about 10 days in February 2022. *See* Declaration of Stephanie Mejia ("Mejia Decl."), filed herewith, ¶ 5. Throughout the relevant time period, Plaintiff was a member of a bargaining unit represented by the Bakery, Confectionery, and Tobacco Workers and Grain Millers International Union, Local 125 (the "Union") and his position was subject to a collective bargaining agreement between Defendant Ghirardelli and the Union. Mejia Decl., ¶¶ 3, 5 and 6.  Section 1(a) of the collective bargaining agreement provides that "this Agreement shall cover all working conditions, wages, and hours of employment affecting the employees of the Employer …"  *Id*. at Mejia Decl., Exh. A.

2.      On or around October 27, 2022, Plaintiff commenced the above-entitled action in the Superior Court of California, County of Alameda, Case No. 22CV020713. True and correct copies

of the Complaint, Summons, and Civil Case Cover Sheet are attached hereto as Exhibits 1, 2, and 3, respectively. Notice of Case Management Conference, and the Court's Ruling on 12/13/2022 Complex Determination Hearing are attached hereto as Exhibits 4 and 5, respectively. Defendant's Answer to Complaint is attached hereto as Exhibit 6.

3. Plaintiff's Complaint seeks damages and civil penalties pursuant to the California Labor Code, including the Private Attorneys General Act ("PAGA"), on behalf of himself and other allegedly similarly situated and aggrieved employees who are currently or formerly employed by Defendant during the relevant period. As detailed below, Plaintiff's Complaint implicates federal law because the terms and conditions of Plaintiff's and the putative class' and alleged aggrieved employees' employment with Defendant were subject to a collective bargaining agreement between Defendant Ghirardelli and the Bakery, Confectionery, and Tobacco Workers And Grain Millers International Union, Local 125 (the "Union") dated July 16, 2016 through July 16, 2022 (the "CBA"). Mejia Decl., ¶¶ 3, 5 and 6. The term of the CBA was extended beyond July 16, 2022, and is currently being honored while the parties negotiate a new contract. Mejia Decl. ¶ 3.

4. Plaintiff's Complaint omits that the terms and conditions of Plaintiff's, the putative class', and the alleged aggrieved employees' employment with Defendant were subject to the CBA.

5. A copy of this Notice of Removal will be served on Plaintiff and filed with the Superior Court of California for the County of Alameda. Exhibits 1-6 contain all process, pleadings, and orders served on Defendant in accordance with 28 U.S.C. § 1446(a), and no other proceedings have been held in this action.

## II.    STATEMENT OF FEDERAL QUESTION JURISDICTION

6. This Court has original jurisdiction under 28 U.S.C. § 1331, and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(a), because it is a civil action that presents a federal question.

7. Plaintiff's claims are either based upon or preempted by federal law, specifically Section 301 of the LMRA ("Section 301"). 29 U.S.C. § 185. Under Section 301, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in a district court for the United States having jurisdiction

1  of the parties without regard to the amount in controversy or without regard to the citizenship of the

2  parties." *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000).

3      8.    Section 301 preempts state law claims requiring interpretation of a CBA. "[T]he pre-

4  emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation

5  of contracts between an employer and a labor organization." *Franchise Tax Bd. of State of Cal. v.*

6  *Construction Laborers Vacation Trust for Southern Cal.* 463 U.S. 1, 23 (1983).) Section 301 also

7  preempts "any state [law] claim whose outcome depends on analysis of the terms of the agreement."

8  *Newberry v. Pacific Racing Ass'n* 854 F.2d 1142, 1146.) "[T]he key to determining the scope of

9  Section 301 preemption is not based on how the complaint is framed," it is based on whether

10 resolution of the claims requires "referring to the terms of the…[CBA]." *Id.* The reason is that "the

11 interpretation of [CBAs] is exclusively a matter for arbitration under federal law." *Levy v. Skywalker*

12 *Sound* 108 Cal.App.4th 753, 762 (2003). "Once preempted, 'any claim purportedly based on [a] state

13 law is considered, from its inception, a federal claim, and therefore arises under federal law'."

14 *Burnside v. Kiewit Pacific Corp.* 491 F.3d 1053, 1059 (9th Cir. 2007), citing, *Caterpillar, Inc. v.*

15 *Williams* 482 U.S. 386, 393 (1987).

16     9.    A plaintiff cannot avoid Section 301 preemption by "artfully pleading" a claim to

17 allege state law violations. *Hyles v. Mensing* 849 F.2d 1213, 1215.) For example, where "[r]esolution

18 of plaintiffs' claim to overtime pay ... cannot be decided by mere reference to unambiguous terms of

19 the agreement," it is preempted. (*Id.*) Courts have also found meal and rest period claims to be

20 preempted where the applicability of the Labor Code provisions require analysis and interpretation

21 of a CBA. See e.g., *Coria v. Recology, Inc.* 63 F.Supp.3d 1093, 1097 (N.D. Cal. 2014); *Ayala v.*

22 *Destination Shuttle Servs. LLC* (C.D. Cal. Nov. 1, 2013) 2013 WL 12092284, at *4.)

23     10.   Section 301 of the LMRA provides a basis for federal jurisdiction, and authorizes

24 federal courts to develop a federal common law of the interpretation of collective bargaining

25 agreements. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988). To ensure uniform

26 interpretations of collective bargaining agreements, federal common law preempts the use of state

27 law in collective bargaining agreement interpretation and enforcement. *Local 174, Teamsters,*

28 *Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103– 04 (1962);

1    *Lingle*, 486 U.S. at 411.

2    11.    Further, all state law claims raised by a union-represented employee that require

3    interpretation of a collective bargaining agreement must be brought pursuant to Section 301 of the

4    LMRA. *Allis-Chalmers Corp. v. Lueck*, 571 U.S. 202, 211 (1985); *Newberry v. Pac. Racing Ass'n*,

5    854 F.2d 1142, 1146 (9th Cir. 1988) (concluding "[t]he preemptive force of section 301 is so

6    powerful that it displaces entirely any state cause of action for violation of a collective bargaining

7    agreement . . . [and] any state claim whose outcome depends on analysis of the terms of the

8    agreement."); *see also Voorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) (noting

9    that Section 301 is one of "only two areas in which the Supreme Court has found that Congress

10   intended completely to replace state law with federal law for purposes of federal jurisdiction").

11   12.    Section 301 has specifically been held to preempt California state law claims that are

12   substantially dependent upon interpretation of a CBA. *Firestone*, 219 F.3d at 1066-67 (claim

13   preempted by Section 301 where the CBA had to be interpreted to resolve the plaintiff's wage

14   claims). This remains true even where interpretation was required to evaluate the employer's defense

15   to a plaintiff's state law cause of action. *See Levy v. Skywalker Sound*, 108 Cal. App. 4th 753, 769

16   (2003) (claim for unpaid wages preempted because it "rest[ed] entirely" on a claim that plaintiff was

17   "entitled . . . to wages at the level set by the CBA"). Thus, any suit "alleging a violation of a provision

18   of a labor contract must be brought under § 301 and be resolved by reference to federal law. *Curtis*

19   *v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) ("A state rule that purports to define the

20   meaning or scope of a term in a contract suit therefore is pre-empted by federal labor law.").

21   13.    Adjudicating Plaintiff's Complaint will require interpretation of the CBA. First,

22   Plaintiff's PAGA claim is premised upon, and therefore derivative of, the various underlying

23   violations of the California Labor Code identified in Plaintiff's Complaint.  *Curtis v. Irwin Indus.*,

24   *Inc.*, 913 F.3d 1146, 1150 n.3 (9th Cir. 2019) (PAGA claims depend on the underlying violations of

25   the California Labor Code alleged in the complaint). As detailed below, many (if not all) of the

26   underlying labor code violations alleged in Plaintiff's Complaint are preempted by the CBA. Thus,

27   Section 301 preempts the underlying labor code violations as well as Plaintiff's cause of action under

28   the PAGA. *See, e.g., Lingle*, 486 U.S. at 405-06 ("[I]f the resolution of a state-law claim depends

1   upon the meaning of a collective-bargaining agreement, the application of state law . . . is

2   preempted"); *see also Franco v. E-3 Sys.*, No. 19-CV-01453-HSG, 2019 WL 6358947, at *3 (N.D.

3   Cal. Nov. 8, 2019) (extending federal question jurisdiction to plaintiff's PAGA claim).

4          14.    The fact that Plaintiff seeks civil penalties under PAGA is irrelevant for purposes of

5   preemption – i.e., it does not defeat removal or preemption. *See, e.g., Martinez v. Omni Hotels Mgmt.*

6   *Corp.*, No. 20-CV-1924-MMA (BLM), 2021 WL 196509, at *4 (S.D. Cal. Jan. 20, 2021) ("The

7   Court finds Plaintiff's distinction between bringing PAGA claim for civil penalties versus bringing

8   a Labor Code claim for wages is irrelevant for the purposes of preemption."); *see also Sykes v. F.D.*

9   *Thomas, Inc*., No. 20-CV-03616-VC, 2021 WL 343960, at *1 (N.D. Cal. Feb. 2, 2021)( "Thus, the

10   fact that a PAGA plaintiff effectively stands in the shoes of state officials does not change the

11   preemption analysis, and each of the alleged Labor Code violations must be analyzed individually

12   under the Ninth Circuit's two-step test for complete preemption as set out in *Burnside*.")

13        **A.**     **Plaintiff's Employment Was Governed by a CBA.**

14          15.    Plaintiff was employed by Ghirardelli for approximately 10 days, from approximately

15   February 1, 2022 until February 11, 2022, earning $19.00 per hour as a Temporary Worker, Group

16   2.  Mejia Decl., ¶ 5.  At all relevant times alleged in the Complaint, the terms and conditions of

17   Plaintiff's employment with Ghirardelli were subject to the CBA between Defendant and the Union.

18   Mejia Decl., ¶¶ 3, 5 and 6.

19          16.    At all relevant times alleged in the Complaint, Defendant has been a company

20   engaged in commerce and in an industry affecting commerce within the meaning of Sections 2(2),

21   2(6), and 2(7) of the NLRA and Section 301(a) of the LMRA, 29 U.S.C. §§ 152(2), (6), (7) and

22   185(a).  Mejia Decl., ¶ 7.

23          17.    The Union is a labor organization in which certain employees of Ghirardelli

24   participate and which exists for the purpose of dealing with employee grievances, labor disputes,

25   wages, rates of pay, hours of employment, conditions of work, discipline, and discharge. At all

26   relevant times, the Union has been, and is, a labor organization within the meaning of Section 2(5)

27   of the NLRA and 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a).

28   / / / /

18.    Sections 2 and 26 of the CBA specifically recognizes the Union as the exclusive representative for covered employees, including Plaintiff, for the purposes of collective bargaining to establish rates of pay, hours of work and other conditions of employment.  Further, Section 1 of the CBA provides that the parties agree that the CBA, "shall cover all working conditions, wages and hours of employment affecting the employees of the Employer …."

**B.    Plaintiff's Claims are Preempted by the LMRA Because They Require Substantial Interpretation of a CBA.**

1.    Plaintiff's Failure to Reference Section 301 of the LMRA in His Complaint Does Not Preclude Removal.

19.    The Complaint omits the fact that Plaintiff was a member of the Union and working in a covered position subject to the terms and conditions of the CBA while employed with Ghirardelli.  However, a plaintiff may not be permitted to "artfully plead" his complaint to conceal the true nature of the complaint. *Young v. Anthony's Fish Grottos, Inc*., 830 F.2d 993,997 (9th Cir. 1987) (holding that plaintiff's state law claim was preempted even though operative complaint made no mention of a collective bargaining agreement). Thus, the fact that Plaintiff has not made specific reference to Section 301 in his Complaint does not preclude removal. *See Milne Employees Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1406 (9th Cir. 1991). The Court may properly look beyond the face of the Complaint to determine whether the claims asserted are in fact preempted by Section 301. *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). Additionally, the Court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983), overruled in part on other grounds in *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009).

20.    An artfully pled state law claim is properly "re-characterized" as a federal claim under the "complete preemption" doctrine, which provides that the preemptive force of Section 301 of the LMRA "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) ("[I]f a federal cause of action completely preempts a state cause of action, any complaint

that comes within the scope of the federal cause of action necessarily 'arises' under federal law.").

21.     To determine whether a claim alleging violations of state law is preempted by Section 301(a) of the LMRA, the Ninth Circuit employs a two-step test. *Curtis*, 913 F.3d at 1152. First, the Court asks "whether the asserted cause of action involves a 'right [that] exists solely as a result of the CBA.'" *Id.*, quoting *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016). Under this test, a claim is preempted if it seeks "purely to vindicate a right or duty created by the CBA itself." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018). If so, "the claim is preempted, and [the] analysis ends there." *Burnside v. Kietwit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). If not, the Courts consider whether a plaintiff's state law right is substantially dependent on analysis of the CBA. *Curtis*, 913 F.3d at 1153. If claims are dependent on interpretation of the CBA, then the claim is preempted by Section 301. *Franco v. E-3 Sys.*, No. 19-CV-01453-HSG, 2019 WL 6358947, at *2 (N.D. Ca. Nov. 8, 2019), citing *Burnside*, 491 F.3d at 159-60.

>    2.     Resolution of Plaintiff's Claims Will Require Substantial Interpretation of Provisions of the CBA.

22.     Section 301(a) of LMRA wholly preempts any and all purported state law causes of action by an employee concerning a dispute over his terms and conditions of employment, if the causes of action are "based directly on rights created by a collective bargaining agreement" or require the "interpretation of a collective bargaining agreement." *See, e.g., Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. Cal. 2000); *Young*, 830 F.2d at 997-98.

23.     As discussed below, Plaintiff's allegations that Defendant violated the California Labor Code involve various rights that "exist solely as a result of the CBA" and/or are "inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chambers*, 471 U.S. at 213. Specifically, Plaintiff's Complaint seeks damages and civil penalties under the California Labor Code, including PAGA, based on the following alleged violations: (1) failure to pay overtime wages (§ 510 and § 1198); (2) failure to provide meal period premiums (§ 226.7 and § 512(a)); (3) failure to provide rest period premiums (§ 226.7); (4) failure to provide minimum wage (§ 1194, § 1197 and § 1197.1); (5) failure to timely pay wages upon termination (§ 201 and § 202); (6) failure to timely pay wages during employment (§ 204); (7) failure to provide complete and accurate wages

1  statements (§ 226(a)); (8) failure to keep requisite payroll records (§ 1174(d)); and (9) failure to

2  reimburse necessary business-related expenses (§ 2800 and § 2802).

3  24.    As set forth below, the CBA governs Plaintiff's and other aggrieved employees' time

4  worked, wages, overtime, and meal and rest periods. (Mejia Decl. ¶ 3, Exhibit A, Sections 4-9 and

5  26). The CBA also provides for a grievance process and requires binding arbitration to resolve any

6  disputes arising under the CBA.  Resolution of Plaintiff's claims will require the Court to interpret,

7  at a minimum, all of these provisions. Therefore, Plaintiff's claims cannot be adjudicated without

8  interpretation of numerous CBA provisions that governed Plaintiff's employment and the

9  employment of the allegedly aggrieved employees.

10  25.    **Wages, Compensation, and Overtime:** Plaintiff's complaint seeks, among other

11  things, overtime wages, minimum wages, and civil penalties, in part, for Defendant's alleged failure

12  to timely provide proper compensation. The focus of Plaintiff's underlying wage claims is that

13  Plaintiff and other allegedly similarly situated or aggrieved employees were not compensated for all

14  time under the control of Defendant.

15  26.    Assuming, arguendo, that Plaintiff's underlying claims are valid, the CBA expressly

16  provides the rates of compensation for hours worked, including minimum wage rates and overtime

17  rates that are owed for time frames in addition to those established by the California Labor Code

18  (e.g., employees are owed a contractual overtime rate for time worked on Saturdays, regardless of

19  the number of hours worked during the workweek (see Section 5(b) of the CBA)).

20  27.    The CBA will need to be interpreted for any unpaid wage claim (minimum or

21  overtime) in order for the Court to determine from the wage scale referenced at Schedule A of the

22  CBA the appropriate rate of pay for no less than 9 groups of employees, some groups with 6 or 11

23  subgroups of employees paid at various rates.

24  28.    Additionally, the rate of pay owed for unpaid wages cannot be determined without

25  interpretation of the CBA because the CBA provides for shift premiums depending on whether

26  employees work swing shifts or graveyard shifts as defined at Section 6 of the CBA.  Thus, if an

27  employee has hours that have not been compensated, the rate at which they need to be paid for that

28  time will require interpretation of the CBA.

29.    Additionally, the CBA between Ghirardelli and the Union meets the § 514 requirements for exemption. The CBA provides for the wages (see CBA generally and Section 9), hours of work (see CBA generally and Section 4), working conditions (Sections 4-10), premium wage rates for overtime (Section 5), and an hourly pay rate that is greater than 30 percent of the California minimum (Section 9 and related Schedules). The overwhelming majority of employee-categories in the CBA wage scale are assigned hourly rates of pay that exceed § 514's requirement. *See*, *Sachs v. Pankow Operating, Inc.*, 2:21-cv-08998-AB (ADSx), 2022 WL 489696 at *6 (C.D. Cal., February 16, 2022) (Section 514 requirements met when the vast majority of the employee categories in the CBA are assigned hourly rates of pay that greatly exceed Section 514's requirement).

30.    Additionally, the CBA sets forth the parties' mutual agreement regarding all issues pertaining to employee wages, including but not limited to applicable wage rates and contractual rest break benefits that are in addition to statutory rights. Mejia Decl., Exh. A, Section 9.  The CBA expressly provides that, "All disputes between and Union and the Employer resulting from the application or interpretation of this Agreement shall be subject to [a 6 Step grievance procedure that culminates in binding arbitration]."   *Id*. at Section 26.    Thus, Plaintiff's rights to wages, compensation, and overtime substantially depend on an analysis of the CBA.

31.    **Meal and Rest Periods:** Plaintiff's complaint includes claims for Defendant's alleged failure to provide compliant meal and rest breaks.  Plaintiff's underlying meal and rest period and derivative claims seek to vindicate rights that require analysis and interpretation of the CBA. Plaintiff's underlying meal and rest period and derivative claims cannot be adjudicated without interpretation of numerous CBA provisions governing Plaintiff's employment, *Hayden v. Reickerd*, 957 F.2d 1506, 1509 (9th Cir. 1991), and are therefore subject to arbitration, not court action. *See Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 561 (1968) (holding, when a claim is preempted by Section 301, an employee's remedy lies within the CBA).  The CBA provides for meal and rest periods, and expressly lays out the conditions under which employees are entitled to such breaks. These provisions differ from the statutory meal and rest period requirements set forth in Labor Code §§ 512 and 226.7 and the IWC Wage Order.

32.     The rest break provisions differ from the rest period requirements set forth in Labor Code section 226.7 and the IWC Wage Order. For example, the CBA provides Plaintiff with a rest break of 12 minutes instead of the 10 minute rest breaks provided under the Wage Order 1. Mejia Decl. ¶ 3, Exhibit A, Section 8. The Court will need to interpret whether that 12 minute period is sufficient to authorize and permit a "net" 10 minutes of duty free break time. In addition, determining the premium pay rate at which missed breaks should be paid will require interpreting the CBA as detailed above at paragraphs 27-28.

33.     Also, the CBA provides that "Employees taking such rest periods shall do so only after receiving permission or instructions from their supervisor, in order that there shall be a minimum interruption of production." Mejia Decl. ¶ 3, Exhibit A, Section 8a. This requirement does not exist under the statutory rest period requirements, and thus this language will require further analysis to determine whether Plaintiff met her contractual burden of receiving permission or instructions from her supervisor prior to rest breaks, what factors were considered on any particular shift, and whether a rest break was permitted or not based on whether there would be a minimum interruption of production.

34.     In addition, the CBA provides that employees are notified that they will work 10 hours, they can get a third rest period after just 8 hours of work. Mejia Decl. ¶ 3, Exhibit A, Section 8b. Again, this provision -- taking a third rest break after 8 hours of work -- does not exist under the statutory rest period requirements, and thus will require further interpretation to determine whether the contractual standards were met regarding pre-notification. Thus, determining whether Plaintiff is entitled to civil penalties for alleged rest period violations will require the Court's interpretation of several CBA provisions that are different from the statutory requirements.

35.     The Court will need to interpret CBA provisions on meal periods. Section 7 of the CBA provides a 30 minute meal period within the first 5 hours of the shift. The Court will need to interpret whether this provision includes a second meal period waiver. Plaintiff's union can waive her second meal period. *See Ehret v. WinCo Foods, LLC*, 26 Cal. App. 5th 1, 5 (2018) (noting that it "is well settled that a union may lawfully waive statutory rights of represented employees in a collective bargaining agreement" and affirming summary judgment for employer where CBA

Case No.
DEFENDANT'S NOTICE OF REMOVAL

provided for a meal period waiver).  Waiver requirements set forth in Labor Code section 512 and Wage Order No. 1 are different, requiring the Court's further interpretative analysis to determine if Section 7 qualifies as a waiver of second meal periods. *See*, *e.g.*, *Marquez v. Toll Glob. Forwarding (USA) Inc.*, *No. 218CV03054ODWASX, 2018 WL 3218102, at \*4 (C.D. Cal. June 28, 2018), aff'd sub nom. Marquez v. Toll Glob. Forwarding, 804 F. App'x 679 (9th Cir. 2020)* at \*3–4 (dismissing with prejudice meal and rest period claims as preempted by § 301 where interpretation of meal and rest period provisions of CBA required).

36.     Thus, Plaintiff's rights related to potential violation of meal and rest breaks substantially depend on an analysis of the CBA.

37.     **Grievance and Arbitration Procedure:** The CBA expressly calls for final and binding arbitration for any and all disputes concerning the application or interpretation of the CBA's provisions, including the provisions on wages and meal and rest breaks.  Mejia Decl., ¶ 3, Exhibit A, Section 26.  A mandatory 6 step grievance procedure that culminates in arbitration is laid out in the CBA and covers all "disputes or controversies between the Union and the Employer resulting from the application or interpretation of this Agreement."   Mejia Decl., ¶ 3, Exhibit A, Section 26. Accordingly, Plaintiff's claims that are premised on Labor Code §§ 201 – 202, 204, 226, 226.7, 510, 512, 1174, 1194, 1197, 1197.1, 1198, 2800 and 2802 are subject to arbitration as the exclusive remedy per the CBA.

38.     The promotion of extra-judicial dispute resolution is another purpose of Section 301 preemption. State court lawsuits properly removed on preemption grounds may then be deferred to arbitration, if the parties to the CBA have so agreed. *See Livadas v. Bradshaw*, 512 U.S. 107, 142 fn. 18 (1994). Here, the parties have so agreed, and the claims are therefore subject to arbitration as discussed above. Accordingly, any alleged violation of the CBA is subject to the grievance procedures set forth therein. As all of Plaintiff's claims are in essence alleged violations of the CBA, the Court will necessarily have to interpret the grievance and arbitration provisions to analyze Plaintiff's claims in this case. That is, the Court will be required to determine whether the Plaintiff was first required to exhaust the grievance procedures, whether he did in fact exhaust those procedures, and whether the parties agreed to arbitrate all or some of Plaintiff's claims – which are

1    all questions reserved for federal courts under the LMRA.

2        39.    Accordingly, Plaintiff's claims are substantially dependent upon the interpretation of

3    the foregoing CBA terms and provisions. In fact, those terms and provisions govern nearly all of the

4    conduct which forms the basis of the underlying Labor Code violations alleged in Plaintiff's

5    Complaint, and thus are essential to the resolution of Plaintiff's claim. Plaintiff's claims therefore

6    arises under Section 301 of the LMRA, and are preempted by federal law. Removal to federal court

7    is warranted. *See Radcliff v. San Diego Gas & Elec. Co*., No. 3:20-CV-01555-H-MSB, 2021 WL

8    532258, at *3 (S.D. Cal. Feb. 12, 2021) (denying motion to remand claim based on alleged lack of

9    original jurisdiction, and finding plaintiff's claim was preempted by § 301 of the LMRA).

10   **III.    SUPPLEMENTAL JURISDICTION**

11       40.    Pursuant to 29 U.S.C. § 1367(a), supplemental jurisdiction is appropriate when state

12   and federal claims "derive from a common nucleus of operative facts." *United Mine Workers of*

13   *America v. Gibbs*, 383 U.S. 715, 725 (1966). *See also, Van Bebber v. Dignity Health*, 1:19-cv-00264-

14   DAD-EPG, 2019 WL 4127204, at *9 (E.D. Cal. Aug. 30, 2019) (exercising supplemental jurisdiction

15   over a plaintiff's remaining causes of action because they arose out of the same employment

16   relationship as their overtime claim).

17       41.    Because Plaintiff's remaining claims largely are derivative from the preempted labor

18   code claims, the Court shall exercise supplemental jurisdiction over the claims pursuant to 28 U.S.C.

19   § 1367(a) to avoid needless expense of judicial resources and the potential for inconsistent judgments

20   due to parallel proceedings. *E.g., Estrada v. Kaiser Foundation Hospitals*, 678 Fed. Appx. 494, 497

21   (9th Cir. 2017) (finding that when a claim derives from a LMRA-preempted claim, the derivative

22   claim also fails); *Jimenez v. Young's Market Company, LLC*, 2021 WL 5999082 at *13 (N.D. Cal.

23   Dec. 20, 2021) (finding that claims for failure to pay final wages and provide accurate wage

24   statements were preempted because they were derivative of substantive claims for owed overtime

25   and meal break violations)

26       42.    Specifically, Plaintiff's claims for PAGA penalties and violation of California's

27   Business & Professions Code §§ 17200, *et seq*., are predicated upon facts and circumstances that are

28   inextricably intertwined with and dependent upon an interpretation of the CBA. In addition, the wage

1    claims are intertwined with and dependent upon an interpretation of the CBA.  As a result, all the

2    pleaded underlying Labor Code violations emanate from and form part of the same "case or

3    controversy," such that they should all be tried in one action. *See Nishimoto v. Federman-Backrach

4    & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990); *Franco v. E-3 Sys.*, No. 19- CV-01453-HSG, 2019 WL

5    6358947, at *3 (N.D. Cal. Nov. 8, 2019) (extending supplemental jurisdiction because plaintiff's

6    claim for "civil penalties under PAGA does not change the underlying nature of the predicate

7    California Labor Code violations."); *Landy v. Pettigrew Crewing, Inc.*, No. 219CV07474RGKAFM,

8    2019 WL 6245525, at *5 (C.D. Cal. Nov. 22, 2019) (extending supplemental jurisdiction over PAGA

9    claims not covered by the CBA). Considerations of convenience, judicial economy, and fairness to

10   the litigants strongly favor this Court exercising supplemental jurisdiction over all the underlying

11   alleged violations of the Labor Code and Business and Professions Code in Plaintiff's Complaint.

12   *See Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994); *Franco v. E-3 Sys.*,

13   No. 19-CV-01453-HSG, 2019 WL 6358947, at *3 (N.D. Cal. Nov. 8, 2019); *Landy v. Pettigrew*

14   *Crewing, Inc.*, No. 219CV07474RGKAFM, 2019 WL 6245525, at *5 (C.D. Cal. Nov. 22, 2019).

15   **IV.    OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED**

16         43.    Removal Was Timely. Defendant received the Complaint through service of process

17   on November 15, 2022. This Notice is timely filed in accordance with 28 U.S.C. § 1446(b), because

18   it is within thirty (30) days from when Defendant received the pleadings setting forth the claims for

19   relief upon which this removal is based.

20         44.    State Court Within this Court's Jurisdiction. Venue is proper in the Northern District

21   of California pursuant to 28 U.S.C. §§ 84(c) and 1391 because the county in which the State Court

22   Action was pending (Alameda) is found within this District.

23         45.    Consent to Removal. Defendant is not aware of any other defendants having been

24   served with a copy of Plaintiff's Complaint, and the requirements of 28 U.S.C. § 1446(b)(2)(A) are

25   met.

26         46.    State Court Pleading Attached. In compliance with 28 U.S.C. § 1446(a), true and

27   correct copies of all "process, pleadings and orders" from the state court action served on Defendant

28   or filed by Defendant are attached hereto as the following exhibits, including Plaintiff's Complaint

(Exhibit 1); Summons of Plaintiff's Complaint (Exhibit 2); Civil Case Cover Sheet (Exhibit 3); Notice of Case Management Conference (Exhibit 4); Ruling on Complex Determination (Exhibit 5); and, Defendant's Answer to Plaintiff's Complaint (Exhibit 6).

47.     Filing and Service of Notice of Removal. This Notice will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of Alameda.

## RESERVATION OF RIGHTS

This Notice of Removal is filed subject to and with full reservation of rights, including but not limited to defenses and objections to venue, improper service, and personal jurisdiction. No admissions are intended hereby as to the propriety of liability or damages with respect to any aspect of this case, and all defenses, motions, and pleas are expressly reserved.

WHEREFORE, Defendant requests that the above action pending before the Superior Court of the State of California for the County of Alameda be removed to the United States District Court for the Northern District of California.

DATED:  December 15, 2022

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By:  /s/ Jade Butman
    MICHAEL J. NADER
    JADE BUTMAN

    Attorneys for Defendant
    GHIRARDELLI CHOCOLATE COMPANY

    54184000.v2-OGLETREE